IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSE ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| GUARANTEED RATE, INC., | ) |
| ROBERT STINES and | ) |
| ADAM KAMARAT, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## PLAINTIFF'S COMPLAINT AND JURY TRIAL DEMAND

For his Complaint, Plaintiff Jesse Anderson ("Plaintiff") states as follows:

1. Plaintiff brings this action against Defendants Guaranteed Rate, Inc. ("GRI"), Robert Stines ("Stines"), and Adam Kamarat ("Kamarat") (collectively, "Defendants") for retaliation in violation of the Fair Labor Standards Act ("FLSA").

2. At all relevant times, Plaintiff resided in Kane County, Illinois.

3. GRI is a corporation organized and existing under the laws of Delaware, with its principal place of business in Illinois. GRI transacts business in Cook County, Illinois.

4. At all times relevant, GRI employed Stines and Kamarat in a supervisory capacity at its place of business in Cook County, Illinois.

5. From September 2009 through January 2010, Plaintiff was employed as a Mortgage Consultant for GRI and he was assigned to a team supervised by Stines and Kamarat.

6. This Court has jurisdiction over a FLSA retaliation claim pursuant to 28 U.S.C. §§ 1331; 1343.

7. The unlawful employment practices complained of in this Complaint occurred within Cook County, Illinois. Thus, venue is proper in this Court.

8. At all relevant times, GRI was an employer within the meaning of 29 U.S.C. § 203(d).

9. At all relevant times, Stines and Kamarat were employers within the meaning of 29 U.S.C. § 203(d).

10. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

11. As a term and condition of his employment with GRI, Plaintiff was required to execute a Sales Compensation Plan. The Sales Compensation Plan, among other things, set forth the formula by which GRI agreed to pay commissions to Mortgage Consultants.

12. Plaintiff both developed his own client leads and received leads from GRI. GRI was to compensate Plaintiff on the basis of commissions for the mortgage loans he closed in accordance with its Sales Compensation Plan.

13. Through both written and oral communications, Plaintiff asked Defendants to facilitate the processing and closing of his loans in accordance with GRI standards. These communications occurred both privately with management and during open employee meetings.

14. On November 4, 2009, during a sales floor meeting conducted by Shawn Greve ("Greve") and attended by Mortgage Consultants and supervisors, Plaintiff openly expressed concerns about working without compensation and he raised questions regarding the processing times for loans in the system.

15. After expressing his concerns about GRI's compensation practices, Plaintiff was treated differently than other similarly situated Mortgage Consultants and was retaliated against by Defendants.

16. On November 5, 2009, the day after the sales floor meeting, Stines advised Plaintiff that he would need to meet with Stines.

17. On November 6, 2009, Plaintiff met with Stines and Kamarat. Kamarat accused Plaintiff of "embarrassing him" during the sales floor meeting on November 4, 2009. During the conversation, Kamarat became agitated and shouted at Plaintiff so loudly that an employee from an adjacent office came into the room and said to quiet down.

18. During the November 6, 2009, meeting, Kamarat ordered Plaintiff to refrain from asking questions about loan processing and prohibited him from talking with loan processor Carolyn Pettengill ("Pettengill"). Kamarat stated that Plaintiff had not been with GRI long enough to talk with Pettengill.

19. Similarly situated Mortgage Consultants who did not raise questions about GRI's compensation practices were not prohibited from talking with the loan processor about the status of loans.

20. During the November 6, 2009, meeting, Plaintiff was also told that he better "shut up and be humble" or Plaintiff would lose his job.

21. During the November 6, 2009, meeting, Kamarat encouraged Plaintiff to quit his job.

22. Similarly situated Mortgage Consultants who did not raise questions about GRI's compensation practices were not threatened with the loss of their jobs or encouraged by Defendants to resign.

3

23. On November 9, 2009, Plaintiff met with Stines and informed him that he had felt threatened during the November 6 meeting with him and Kamarat and requested a transfer to Shelton's team of Mortgage Consultants. Stines told Plaintiff if he was unhappy he could quit, but Stines would not grant his transfer request.

24. On November 9, 2009, Plaintiff met with Greve and informed him of Stines' and Kamarat's conduct during the November 6 meeting. Plaintiff asked Greve if he could transfer to Shelton's team of Mortgage Consultants, but Greve also denied his transfer request. Plaintiff was never provided with an explanation for why his transfer request was denied.

25. Similarly situated Mortgage Consultants who did not raise questions about GRI's compensation practices were not denied transfer to a different team of Mortgage Consultants.

26. Mortgage Consultants were to be assigned a sales assistant who would assist in sending out the application kit to the borrower and ordering title and appraisal work for the subject property. The sales assistant would effectively help the Mortgage Consultants earn a commission by closing the loan. Plaintiff, however, was not offered or provided with a sales assistant to help him with the processing of his loans.

27. Similarly situated Mortgage Consultants who did not raise questions about GRI's compensation practices were offered and provided with a sales assistant to help them with the processing of their loans.

28. Defendants' Sales Compensation Plan purported to establish a mathematical formula by which commissions were to be paid to Mortgage Consultants.

29. Defendants unilaterally made exceptions to the Sales Compensation Plan for Mortgage Consultants on a case-by-case basis in order to waive charge-backs and increase commission payments. These unilateral modifications were made at the sole discretion of

4

Defendants with no rules or guidelines governing when and to what extent exceptions could be made to the Sales Compensation Plan.

30. After Plaintiff complained about GRI's compensation practices, he was treated less favorably during his employment than similarly situated Mortgage Consultants.

31. After Plaintiff complained about his pay and Defendants' pay practices, he did not receive during his employment the same treatment with regard to waiving charge backs and assigning more favorable commission percentages as did other similarly situated Mortgage Consultants who did not complain about compensation.

32. After complaining about pay and Defendants' pay practices, Plaintiff did not receive the same assistance and level of cooperation from underwriting and other departments as did other similarly situated Mortgage Consultants who did not complain about compensation.

33. Plaintiff was forced to resign his employment with GRI to avoid continued violations of his right to be free from retaliation under the FLSA.

34. GRI, Stines, and Kamarat constructively discharged Plaintiff.

35. In February of 2010, after Plaintiff had resigned, GRI sent a letter to Plaintiff demanding that he pay GRI $1,803.68. This demand left Plaintiff with a significant net loss for his four months of employment at GRI.

36. Stines and Kamarat were responsible for administering GRI's compensation practices and, as such, are jointly and severally liable for GRI's violations of the FLSA.

37. Defendants' actions were willful and done with malice or reckless disregard for Plaintiff's federally protected rights.

5

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court award him backpay, liquidated damages, front pay, injunctive relief, attorneys' fees, and costs, in an amount to be determined at trial.

## Jury Trial Demand

Plaintiff respectfully requests a jury trial on all issues so triable.

    Respectfully submitted,

    /s/Mark J. Romaniuk
    Mark J. Romaniuk (ARDC #6308286)
    FAEGRE BAKER DANIELS LLP
    300 N. Meridian Street, Suite 2700
    Indianapolis, IN 46204
    Telephone: (317) 237-0300
    Facsimile: (317) 237-1000
    Email: mark.romaniuk@FaegreBD.com

    Kurt Stitcher (ARDC #6205369)
    FAEGRE BAKER DANIELS LLP
    311 South Wacker Drive, Suite 4400
    Chicago, IL 60606
    Telephone: (312) 212-6526
    Facsimile: (312) 212-6501
    Email: kurt.stitcher@FaegreBD.com

    Attorneys for Plaintiff, Jesse Anderson